<hr />

[No. 8532. Department One. June 13, 1910.]

M. YATSUYANAGI et al., *Appellants*, v. S. SHIMAMURA,
*Respondent.*[1]

PARTNERSHIP—EXISTENCE OF RELATION— ARTICLES — SUFFICIENCY. Written articles of copartnership are sufficient to establish a partnership where it can be determined from the express agreement, or inferred from their acts and conduct, that the parties intended to establish a partnership relation, notwithstanding that certain blanks as to deposits in a bank and division of surplus were not filled up, and a separate agreement relating to their several contributions to the partnership property referred to in the articles was never executed, the blanks being immaterial details, and the law assuming the contributions to be equal in the absence of agreement to the contrary.

DAMAGES—LIQUIDATED DAMAGES—BREACH OF PARTNERSHIP AGREE-MENT. Liquidated damages may be awarded for the breach of articles of copartnership for conducting a tailoring business for the period of five years, where the articles provided that any member withdrawing therefrom without the consent of his copartners shall pay the sum of $1,000 as liquidated damages, no fraud or illegality appearing; since the ascertainment of damages would be difficult and uncertain.

[1]Reported in 109 Pac. 282.

Appeal from a judgment of the superior court for King county, Frater, J., entered December 7, 1909, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action for the dissolution of a partnership, and for damages.   Reversed.

*Fred Wayne Catlett* and *P. V. Davis,* for appellants.

*Solon T. Williams,* for respondent.

Morris, J.—In this action the appellants sought to recover of respondent $1,000, as liquidated damages for the breach of a partnership agreement.   The defense was a denial of the partnership relation.   Upon the trial the court below found that the agreement relied upon by the appellants to establish the partner relation had been duly executed by all the parties; that in celebration of their new relation the parties joined in giving a dinner, at which they and their respective employees were present; that respondent assisted in preparing the location decided upon for the carrying on of the business; that he was present at such place nearly every day from July 4 to July 27; that he took some part in the discussion of affairs pertaining to the business, sold a suit of clothes, and measured some cloth; that cards advertising the business were issued with his knowledge and consent, upon which his name appeared as one of the proprietors of the business; that in August or September he refused to recognize himself as a partner, and finally refused to have anything more to do with the business.   The court then found, as a conclusion of law, that the articles of copartnership were too indefinite to constitute a partnership, and dismissed the action, from which judgment this appeal is taken.

It is apparent that the first question to be determined is, was there a legal and binding partnership between the parties; for it is likewise apparent that, if in law the parties ever assumed such a relation, the facts as found by the court, and which are sustained by the evidence, would be a sufficient recognition of such a relationship, and its breach on the part of

respondent.   The instrument upon which appellants rely to sustain their contention is as follows:

### "ARTICLES OF CO-PARTNERSHIP.

"This agreement of co-partnership, made and executed in quadruplicate this 30th day of June, A. D. 1908, by and between M. Yatsuyanagi, A. Takatsu, N. Fukuda and S. Shimamura:

"Witnesseth:   That said parties hereby associate themselves together as copartners under the name and style of Nippon United Tailoring Company under the following terms and conditions:

"1st.   This copartnership shall exist for the period of five years from this date, unless previously dissolved by mutual consent of. all parties, and for such further time as may then be agreed upon by all of such parties, and in the event that one or more of said parties shall withdraw from said copartnership without the consent of all of his associates herein he shall forfeit and pay to the remaining member or members the sum of one thousand ($1,000) dollars cash, as for liquidated damages for such withdrawal, and the said sum shall be the property of the party or parties refusing to give his or their consent to such withdrawal.

"2nd.   Each of said parties shall give his best work and endeavor and his best influence towards furthering the objects for which this copartnership is formed.

"3rd.   The object for which this copartnership is formed is to carry on a tailoring business in the city of Seattle, Washington.

"4th.   The sum of four thousand ($4,000) dollars is the capital stock of said copartnership, and to the making up of said capital stock each of said parties contributes his location and good-will and it is the intention and desire of said parties that the same shall be owned in equal shares among the said parties, but inasmuch as their stocks and goods are not at present exactly equal they have this day entered into a separate agreement among themselves, which is made a part hereof, whereby they have determined the exact amount contributed by each, and until the said amounts so as aforesaid contributed have been adjusted according to said last mentioned agreement, the parties hereto are to receive their dividends on the profit of this copartnership in proportion to the

amounts by them respectively put in as shown by the said agreement herein referred to.

"5th. Each of said parties shall be employed by and work for said copartnership from the hour of eight a. m. to eight p. m. (Sundays excepted) except on Saturday, when the hours shall be from eight a. m. to ten p. m. with one hour each day for dinner and for such times as any party shall be absent, except on account of sickness, a corresponding deduction shall be made from his wages hereinafter mentioned, and in the case of sickness a doctor's certificate must be furnished. Each of said parties shall receive as wages for the work in this paragraph mentioned, the sum of ———— dollars per week, and none of said parties shall draw any money from the said copartnership except his said weekly wages, which shall be paid on Monday of each week for the preceding week, and on no other day.

"6th. All money received by said copartnership shall be deposited in the name of the copartnership in the ———— bank, and no money shall be paid out on account of said copartnership except by check.

"7th. When there shall be on hand the sum of ———— dollars, over and above the amount necessary for current expenses, and when the copartnership shall be free of debt, the said surplus shall be divided as provided for in paragraph 4 hereof.

"8th. No money of said copartnership nor any credit of the same shall ever be used for the private purposes of either of said parties, and each of said parties hereby binds himself to pay his own debts, so that the said copartnership shall in no way become responsible therefor.

"9th. Each of said parties hereby binds himself not to engage in any business similar to the business of this copartnership nor to become interested in any manner, either financially or otherwise, in any such business during the said term of the continuance of this copartnership, and each of said parties hereby agrees that should he violate the terms of this paragraph, any and all interest he may have in the said copartnership shall be forfeited to and become the property of the other member or members thereof, as and for liquidated damages.

"10th. It is further agreed and understood as a part of this agreement of copartnership that no slang language or profane or indecent language shall be used, nor any boister-

ous conduct indulged in, or permitted in, on or about the premises where the business of this copartnership is conducted.

"In witness whereof, we have hereunto set our hands and seals in quadruplicate the day and year in this agreement first above written.

"Witnesses:

"Solon T. Williams
"H. K. Fukumoto.

"M. Yatsuyanagi        (Seal)
A. Takatsu              (Seal)
N. Fukuda               (Seal)
S. Shimamura            (Seal)"

We fail to see in what essential particulars this instrument is lacking to establish a partnership between the parties. As we understand the law, the essential test in determining the partnership relation, is whether the parties intended to establish such a relation; and that, as between themselves, this intention is to be determined by their express agreement, or inferred from their acts and conduct. *Causten v. Barnette,* 49 Wash. 659, 96 Pac. 225. It appears that the agreement referred to in paragraph 4 was never executed, nor were the blanks in paragraphs 5, 6, and 7 ever filled in; but such failure in no wise detracts from nor lessens the binding effect of the written agreement executed by the parties; neither of these provisions being in any sense essential to the forming or existence of the relation. In the absence of any agreement to the contrary, the law would assume that the several contributions to the partnership property were equal, and that there was an equal division of the profits and losses. The depositing of the funds in any particular bank or other place was a nonessential. So was the time when there was to be a division of the surplus. These were mere details that in no way contributed to, nor entered into, the creation of the relation itself.

On September 28 the appellants formally dissolved the partnership, and a few days later brought this action. No question is raised here as to whether this is a proper case for awarding liquidated damages, but inasmuch as we must decide that question in order to determine the character of our judgment, we have considered it as properly before us.

The nature of the business was such that, upon a breach of the contract, the ascertainment of damages would be difficult and uncertain, and it would require exceedingly nice discernment and clear distinction on the part of either court or jury to keep away from the realm of speculation and remoteness. There is nothing in the record before us to show any fraud, circumvention, or illegality, which are potent factors in determining whether a sum determined upon by the parties to a contract as liquidated damages will be enforced as such by the courts. Neither is there anything to show that such sum is disproportionate to the actual loss, another feature much regarded by the courts in determining the question.

We therefore hold that this is a proper case for awarding liquidated damages, and as there can be no question raised, in view of this decision, as to the binding force of the partnership agreement, nor its breach by respondent, it only remains to reverse the judgment of the court below and remand the case with instructions to enter a judgment in favor of appellants and against respondent in the sum of $1,000, and costs of both courts. It is so ordered.

Rudkin, C. J., Gose, Chadwick, and Fullerton, JJ., concur.